IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDY EUGENE LINDSEY and
RONA EDITH LINDSEY,

                    Plaintiffs,                    No.  02:10-cv-01437-HZ

      v.

DEPUTY CYNTHIA WYATT, DETECTIVE
TOM BLACKMAN, DETECTIVE GARY         OPINION & ORDER
WELBERG, UNION COUNTY, by and through
the Union County Sheriff's Office, a political
subdivision of the State of Oregon, CITY OF
LA GRANDE, by and through the La Grande
Police Department, an Oregon municipality,

                    Defendants.

Michelle R. Burrows
Attorney at Law
22586 S.W. Park Street
Sherwood, Oregon 97140

        Attorney for Plaintiff

/ / /

1 - OPINION & ORDER

Bruno J. Jagelski
YTURRI ROSE LLP
89 S.W. Third Avenue
P.O. Box "S"
Ontario, Oregon 97914

    Attorney for Defendants Wyatt, Blackman, & Welberg

Robert S. Wagner
Stan LeGore
MILLER & WAGNER LLP
2210 N.W. Flanders Street
Portland, Oregon 97210-3408

    Attorneys for Defendants Union County & City of La Grande

HERNANDEZ, District Judge:

    This 42 U.S.C. § 1983 action brought by Plaintiffs Randy and Rona Lindsey arises from Plaintiffs' arrest in January 2006 on criminal charges which were later dismissed.  Plaintiffs bring malicious prosecution claims against three law enforcement officers and their employing municipalities.  Although the individual Defendant law enforcement officers and the Defendant municipalities separately move for summary judgment, both sets of Defendants contend that there was probable cause for the arrest.  Each set of Defendants raises additional arguments and the individual Defendants also make objections to evidence submitted by Plaintiffs.  Because I agree with Defendants that the undisputed evidence in the record establishes that there was probable cause for the arrest, I grant the motions.

BACKGROUND

    On January 30, 2006, Deveron Schreiner, who was working as a confidential reliable informant (CRI) for the Union County Drug Task Force, gave Kris Mallory $1,000.  Mallory Dep. at 24-25 (Ex. 1 to Jagelski Affid.); Ex. 3 to Jagelski Affid.; see also Ex. 7 to LeGore Affid.

2 - OPINION & ORDER

(Incident Report).  In his deposition, Mallory testified that Schreiner owed him money.  Mallory Dep. at 25 (Ex. 1 to Jagelski Affid.).  But, he also testified that Schreiner begged Mallory to get him some marijuana.  Id. at 27.  Mallory agreed to "see what I could do."  Id.

Mallory then went to Plaintiffs' home and left the $1,000 there while taking some marijuana with him.  Id. at 27 (Ex. 1 to Jagelski Affid.); Id. at 45, 48 (Ex. 4 to LeGore Decl.). Mallory testified that because Randy Lindsey had been generous in the past with his marijuana and letting people have it, Mallory did not think Randy Lindsey would mind Mallory taking the marijuana from Plaintiffs' home, even though it was a full quarter pound and Plaintiffs were not present.  Id. at 45-46 (Ex. 4 to LeGore Decl.); Mallory Dep. at 43-44 (Ex. 35 to Burrows Decl.).

After Mallory left Plaintiffs' home, he was stopped by La Grande Police Officer Tony Barnett for an alleged traffic violation.  Ex. 2 to Jagelski Affid. at 2; see also Ex. 7 to LeGore Decl. (Incident Report describing that officers followed Mallory after the CRI gave Mallory the buy money and directed Barnett to make the traffic stop).  Defendants Tom Blackman and Gary Welberg of the La Grande Police Department arrived on the scene along with La Grande Police Sergeant Phil Myer.  Id.  Defendant Cynthia Wyatt of the Umatilla County Sheriff's Office also responded to the scene.  Id.

At some point during the stop, a police dog alerted to the presence of marijuana in Mallory's vehicle and Mallory admitted to its possession.  Ex. 7 to LeGore Decl.  Mallory told the officers he obtained the marijuana from Plaintiffs' house.  Mallory Dep. at 56-58 (Ex. 4 to LeGore Decl.).  During his deposition, Mallory could not recall if the officers had also asked if he had previously obtained marijuana from Plaintiffs' home, but he confirmed that he possibly told police that he had obtained marijuana from Plaintiffs' residence on a few occasions.  Id. at

3 - OPINION & ORDER

57, 58-59; Id. at 92 (Ex. 1 to Jagelski Affid.).  He also testified that he told the police that Randy

Lindsey offered him marijuana all the time.  Id. at 68 (Ex. 4 to Jagelski Affid.).  Mallory further

told the officers that Randy Lindsey would sometimes have several pre-packaged and weighed

quarter pounds of marijuana ready and out in the open in the kitchen.  Id. at 70-71.  Additionally,

Mallory told the officers that Randy Lindsey would go to a safe in the computer room of the

house to get marijuana, indicating that was where Randy Lindsey kept it.  Id.  Mallory further

told the officers that Randy Lindsey used marijuana with a vaporizer and that the Plaintiffs had

firearms in the home.  Id. at 80.  Mallory also told police that the Plaintiffs had a video

surveillance system in the home directed to the grounds outside.  Mallory Dep. at 38 (Ex. 4 to

LeGore Decl.); Ex. 3 to Jagelski Affid.

Based on the information obtained from Mallory, Defendants Blackman, Welberg, and

Wyatt obtained a search warrant to search Plaintiffs' home.  See Ex. 22 to Burrows Decl.

(transcript of oral presentation to Court Judge Philip Mendiguren who signed the warrant); Ex. 7

to LeGore Decl. (Incident Report noting Judge Mendiguren signed warrant).  Police executed the

warrant on the evening of January 30, 2006.

The police seized ninety-one items of evidence as catalogued on an Evidence Form

compiled by Carol Ann St. Clair (then Carol Ann Beddoe) and Becky Wortman (then Becky

Maddock).  Ex. 1 to LeGore Decl.; St. Clair Decl.; Wortman Decl.  St. Clair is an Evidence

Technician for the La Grande Police Department and in 2006, Wortman was an Evidence

Technician for the Union County Sheriff's Office.  St. Clair Decl. at ¶ 2; Wortman Decl. at ¶ 2.

Both were part of the law enforcement team which executed the search warrant at Plaintiffs'

residence on January 30, 2006.  Id. at ¶ 3.  St. Clair and Wortman worked as a team and had an

established routine for collecting evidence as they describe in their Declarations. Id. at ¶ 5. The Evidence Form listing the items seized from the residence on January 30-31, 2006 is the first five pages of Exhibit 1 to LeGore's Declaration.[1]

The evidence seized included numerous containers of marijuana and containers of a green or brown leafy substance along with various items of drug paraphernalia including a "Volcano-style vaporizer," a bong, marijuana processing equipment, numerous firearms, surveillance equipment, and a large safe. Ex. 1 to LeGore Decl. (describing e.g., Item E-1 as ten bags of marijuana; Item E-2 as three jars of marijuana; Item E-5 as three baggies with green leafy substance and two ashtrays with green leafy substance; Item E-10 as a Smith & Wesson revolver; Item E-13 as two ashtrays, one with green leafy substance and the other with a used joint; Item E-19 as two quart Kerr canning jars with green leafy substance, as well as another jar and bags of green leafy substance; Item E-20 as scales; Item E-26 as a large ziploc bag with green substance; Item E-31 as a surveillance camera; Item E-34 as a stun gun; and Item E-40 as a safe). A live grow operation in the garage was also discovered during the search. Randy Lindsey Dep. at 127 (Ex. 5 to Jagelski Affid.). This included approximately six plants and all the equipment necessary for a grow operation. Id.

Item E-1 was later confirmed to be marijuana and found to have a net weight of 3,290.2 grams, or 7.25 pounds. Ex. 3 (Oregon State Police Forensic Laboratory Report). The total amount of marijuana seized that evening from Plaintiffs' residence weighed approximately 11.3 pounds. Ex. 7 to LeGore Decl.

On January 31, 2006, an Information for each Plaintiff was filed in Union County Circuit

---

[1] It also appears in the record as Exhibit 4 to Jagelski's Affidavit.

Court charging each Plaintiff with the three offenses noted above.  Ex. 8 to LeGore Decl.

On February 3, 2006, the safe found in the Plaintiffs' home was opened.  Greenough Decl. at ¶ 3.  Wortman, the County's Evidence Technician, as well as Carla Greenough, an Evidence Technician for the La Grande Police Department, inventoried its contents.  Id. at ¶ 4; Wortman Decl. at ¶ 7.  The same procedure used to inventory the evidence seized the night of January 30, 2006 at Plaintiffs' home was used to inventory the contents of the safe.  Id.

The safe contained a number of bags of marijuana and dozens of firearms.  Ex. 1 to LeGore Decl. at 6-12.  It also contained $33,000 in United States currency, with $820 identified as the remaining "buy money," packaged separately from the other $32,180.  Id.; Greenough Decl. at ¶ 8.  Photographs of the safe's contents were taken.  Ex. 2 to LeGore Decl.

On February 7, 2006, Amended Informations re-charged each Plaintiff with the crimes of delivery of marijuana, possession of marijuana, and frequenting a place where controlled substances are used, and added two counts of theft in the first degree based on the fact that two of the guns found in the safe had been stolen.  Ex. 9 to LeGore Decl.  On February 8, 2006, Plaintiffs were indicted by a grand jury for all of these crimes.  Ex. 1 to Burrows Decl.

In August 2008, the theft charges were dismissed; the remaining charges were dismissed in November 2008.  First Am. Compl. at ¶ 34; Schilling Decl.

At the time Plaintiffs were arrested on January 30, 2006, Rona Lindsey possessed a valid federal firearms license.  Rona Lindsey Dep. at 9 (Ex. 34 to Burrows Decl.).  Ex. 19 to Burrows Decl. (License issued to "Real Guns"/Rona Lindsey).  Also, at the time of the arrest, Randy Lindsey was a registered participant under Oregon's Medical Marijuana Act (OMMA).  Randy Lindsey Dep. at 21 (Ex. 33 to Burrows Decl.) (stating that he had been registered as a patient

with the program since 2001).

After the Plaintiffs were arrested, but before the charges were dropped, Defendants Blackman and Welberg resigned from employment as police officers with the City of La Grande. See Exs. 13, 14 to Burrows Decl. The record indicates that both officers had been investigated for falsifying a police report in an unrelated case. Id. Any additional relevant facts are discussed below.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Long v. City & County of Honolulu, 511 F.3d 901,

905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material

issue of fact implausible, that party must come forward with more persuasive evidence to support

his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986).

DISCUSSION

I.  Description and Elements of the Claims

As a result of earlier rulings, the only claims remaining are a section 1983 malicious

prosecution claim against Defendants Blackman, Welberg, and Wyatt, and a supplemental state

law malicious prosecution claim against Defendants Union County and the City of La Grande.

Other claims challenging various aspects of the events culminating in Plaintiffs' arrest have been

dismissed.  Additionally, the portion of the malicious prosecution claims based on the theft

charges was previously dismissed because of the statute of limitations.  Thus, only the

prosecution of the marijuana-related charges forms the basis of the malicious prosecution claims.

To prevail on a section 1983 malicious prosecution claim, Plaintiffs "must show that the

defendants prosecuted [them] with malice and without probable cause, . . . that they did so for the

purpose of denying [them] equal protection or another specific constitutional right[,]" and that

the underlying criminal action terminated in their favor.  Awabdy v. City of Adelanto, 368 F.3d

1062, 1066, 1068 (9th Cir. 2004) (internal quotation marks omitted); see also Evans v.

Multnomah Cnty., No. 03:07–cv–01532–BR, 2009 WL 1011580, at *11 (D. Or. Apr. 15, 2009)

("[A] plaintiff alleging malicious prosecution under section 1983 must establish: (1) the elements

of the state law tort; and (2) an intent to deprive the plaintiff of a constitutional right.") (internal

quotation marks and ellipsis omitted), aff'd in part, rev'd in part on other grounds, 492 F. App'x

756 (9th Cir. 2012).

     To establish a malicious prosecution claim under Oregon law, Plaintiffs must show  "(1)

the institution or continuation of criminal proceedings; (2) by or at the insistence of the

defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the

proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of

the prosecution." Singh v. McLaughlin, 255 Or. App. 340, 352, 297 P.3d 514, 522 (2013).

II.  Probable Cause

     Because a lack of probable cause is an element of the section 1983 malicious prosecution

claim and the state law claim, the existence of probable cause is a complete defense to both

claims.  Lassiter v. City of Bremerton, 556 F.3d 1049, 1054–55 (9th Cir. 2009) ("probable cause

is an absolute defense to malicious prosecution"); Hartley v. State Water Res. Dep't, 77 Or. App.

517, 520, 713 P.2d 1060, 1061 (1986) (same).

     Probable cause is a question of law for the court.  Dunn v. Castro, 621 F.3d 1196, 1199

(9th Cir. 2012); Dow v. Sears, Roebuck & Co., 84 Or. App. 664, 679, 734 P.2d 1387, 1391

(1987).  However, if there are disputed material facts bearing on probable cause, they are

ordinarily submitted to the jury.  Dow, 84 Or. App. at 679, 734 P.2d at 1391.  Under Oregon law,

probable cause to bring criminal proceedings "'refers to the subjective and objectively reasonable

belief that the [Plaintiffs] committed a crime.'"  Gordon v. Kleinfelder West, Inc., No.

03:11–cv–00245–HU, 2012 WL 844200, at *9 (D. Or. Mar. 12, 2012) (quoting Blandino v.

Fischel, 179 Or. App. 185, 191, 39 P.3d 258, 261 (2002)); see also Mason v. Johnston, No.

03:00-cv-00919-AS, 2001 WL 34042618, at *9 (D. Or. May 11, 2001) ("To have probable cause

to arrest, the officer must subjectively believe a crime has been committed and that belief must be objectively reasonable under the circumstances.")

Defendants argue that based on the evidence seized from Plaintiffs' residence in the search, there was probable cause to arrest Plaintiffs for the marijuana-related crimes. Marijuana is a controlled substance under federal and state law. 21 U.S.C. § 812; Or. Rev. Stat. §§ (O.R.S.) 475.005, 475.059. Delivery of one ounce or more of marijuana is a Class B or C felony in Oregon, depending on whether it was delivered for consideration. O.R.S. 475.860. Intentional or knowing possession of one ounce or more of marijuana is a Class B felony unless the substance was obtained pursuant to "a valid prescription or order of a practitioner[.]" O.R.S. 475.752; O.R.S. 475.864. Finally, if a "person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or keep or sell them in violation of O.R.S. 475.005[,]" then that person is guilty of a Class A misdemeanor. O.R.S. 167.222. The term "frequent" means "repeatedly or habitually goes to or resorts to." Id.

As noted above, more than eleven pounds of marijuana was found during the initial search on January 30-31, 2006, along with many items clearly suggestive of the manufacture and delivery of marijuana such as scales, baggies, surveillance cameras, and weapons. Additionally, the officers knew that Mallory had just obtained one-quarter pound of marijuana from Plaintiffs' residence. Mallory's deposition testimony is clear that he told the police that he obtained the marijuana found in his car during the traffic stop from Plaintiffs' residence. He further confirmed in his deposition that he told the police that Randy Lindsey offered him marijuana "all the time," had several pre-packaged and weighed quarter-pound packages out in the open in the kitchen, and retrieved packages of marijuana from a safe in the computer room.

10 - OPINION & ORDER

Even if the search warrant obtained by the individual Defendants was based on false statements or deliberate omissions, all of the evidence seized from Plaintiffs' residence is admissible in the context of these civil claims because the exclusionary rule, prohibiting use of the "fruits of the poisonous tree" in criminal cases, does not apply in subsequent civil challenges. While the Ninth Circuit has not expressly addressed this issue, other circuit courts have held that the exclusionary rule does not apply to section 1983 claims.  In addition, several district courts have reached similar conclusions.

In a factually similar case from the District of Puerto Rico, the plaintiffs and their property were searched by officers who argued that the searches were justified by information provided by an informant.  Medina v. Toledo, 718 F. Supp. 2d 194, 199 (D. P.R. 2010), aff'd, 458 F. App'x 4 (1st Cir. 2012).  At the criminal trial, the court suppressed all of the seized evidence, ruling that the search warrant had been obtained based on an officer's false testimony. Id. at 200.  Because the search and seizure were illegal, the court, upon request of the district attorney's office, dismissed all charges.  Id.  The plaintiffs then brought section 1983 and state law claims of malicious prosecution.  The defendants moved to dismiss the claims.

In analyzing whether there was probable cause to arrest, an element of the malicious prosecution claims, the court explained that

> [w]hile the search warrant itself may have lacked probable cause, rendering the incriminating evidence fruits of the poisonous tree subject to the exclusionary rule, the same rules that apply to criminal cases do not always apply in the civil context. Specifically, in the context of a civil malicious prosecution claim, the exclusionary rule does not apply to the effect that it would nullify the officers' probable cause to arrest[.]

Id. at 207.  Because the search provided the defendants probable cause to arrest the plaintiff for

11 - OPINION & ORDER

possession of illegal drugs and firearms, the plaintiffs could not state a claim for malicious prosecution.

Other cases are in accord.  See, e.g., Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) (lack of probable cause for stop and search did not vitiate probable cause to arrest plaintiff upon discovery of handguns); Wren v. Towe, 130 F.3d 1154, 1158 (5th Cir. 1997) (exclusionary rule does not apply to civil cases); Willis v. Mullins, 809 F. Supp. 2d 1227, 1234 (E.D. Cal. 2011) ("the consensus of the case law is that the fruit of the poisonous tree doctrine does not apply to Section 1983 cases").

Plaintiffs cite to various cases for the proposition that "plaintiffs may assert a constitutional malicious prosecution claim for Fourth Amendment violations, including fabrication of evidence resulting in Fourth Amendment violations."  Pl.'s Resp. at 45.  However, the cases Plaintiffs cite involve malicious prosecution claims based on an officer or other individual having provided false and material information to obtain an arrest warrant.  See, e.g., Wilkins v. De Reyes, 528 F.3d 790, 801 (10th Cir. 2008) (defendants lacked probable cause when arrest warrant affidavits contained fabricated evidence and coerced statements); Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002) (arrest based on falsified autopsy report); Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987) (police report containing allegedly fabricated and false statements used to support arrest).        The cases Plaintiffs rely on are distinguishable because in those cases, the alleged fabrications directly tainted the arrest warrant or the arrest.  Here, any alleged fabrications tainted the search warrant affidavit, not the evidence seized from Plaintiffs' residence.  Thus, in this case, all of the evidence seized from Plaintiffs' residence is admissible to determine whether Defendants had probable

12 - OPINION & ORDER

cause to arrest even if the seizure of that evidence was caused by an allegedly unlawful search.

Plaintiffs, however, challenge the quantity of marijuana seized.  They attempt to create an issue of fact as to the amounts actually found during the search.  Based on what they contend was actually a small quantity of marijuana, they argue that there was no probable cause to arrest because the amount at issue was less than what Plaintiffs were allowed to possess under the OMMA.

Based on Randy Lindsey's Declaration, Plaintiffs challenge the weights ascribed by Defendants to ten bags of marijuana taken from the safe.  There are inconsistences and other issues with Randy Lindsey's testimony,[2] but, putting those aside, he concedes that "[b]ased on the

---

[2]  First, he states that after these ten bags were returned to him at the conclusion of his criminal case, he gave them to Burrows who inquired about them with Welberg at Welberg's deposition.  Randy Lindsey Decl. at ¶ 6.  Randy Lindsey states that when Burrows showed Welberg the bags at Welberg's deposition, Welberg recognized the handwriting on the bags and the bags as being those he seized from the safe.  Randy Lindsey does not state he was present at Welberg's deposition and he offers no other information as to how he possesses personal knowledge of what Welberg testified to in his deposition.  Moreover, the citation to Welberg's deposition provided by Plaintiffs in their briefing on this issue does not show that Welberg identified these ten bags as having been taken from the safe.  While Welberg recognized the initials on the bags, he does not identify them as having been seized from the safe.  Welberg Dep. at 82-83 (Ex. 32 to Burrows Decl.).  Additionally, Randy Lindsey states in his declaration that Burrows "copied the covers of the [ten] bags [removed from the safe] as Exhibit 20 and I have reviewed her copies."  Randy Lindsey Decl. at ¶ 7.  How Randy Lindsey has personal knowledge of what Burrows did is unexplained.  Burrows states that Exhibit 20 is a true and accurate copy of the covers of several bags returned to the Lindseys that at one time held medical marijuana.  Burrows Decl. at ¶ 22.  How Burrows has personal knowledge of what those bags held is not reflected in the record.  Moreover, she does not identify these as being the bags that were seized from the safe.

Four of the ten bag "covers" found in Exhibit 20 to Burrows's Declaration carry a number such as "E 41" which corresponds to the Evidence Form listing the evidence seized from the safe.  For those four, the copies of the "covers" in Exhibit 20 are probably sufficient to establish that those particular bags were actually seized from the safe.  Ex. 20 to Burrows's Decl. at 1 (E-46/Bag 14), 2 (E-41/Bag 17), 4 (E-50/Bag 20), 5 (E-49/Bag 21); Ex. 1 to LeGore Decl. at 7-14.  One page of Exhibit 20 simply lists six bags by number, weight, and initials or name of the person the marijuana was being provided for, but there is no corresponding evidence log number

total weight of these bags seized by the police on January 30, 2006 I was holding a total of 2.26 (pounds) of medical grade marijuana for four separate patients."  Randy Lindsey Decl. at ¶ 15.

Plaintiffs specifically challenge the amount of marijuana seized from the residence on January 30, 2006 and reported on the Evidence Form as E-1.  As noted above, E-1 was listed on the Evidence Form as ten bags of marijuana found by Welberg in a downstairs spare room.  Ex. 1 to LeGore Decl. at 1.  The Oregon State Police Forensic Laboratory report described E-1 as "[d]ried plant leaf material in sealed plastic bag" with a net weight of 3,290.2 grams.  Ex. 3 to LeGore Decl.  The Laboratory confirmed it was marijuana.  Ex. 3 to LeGore Decl.

Even assuming that the record supports Plaintiffs' position that E-1 was not in fact more than seven pounds of marijuana and was instead "loose material" found in the "computer room" that was primarily composed of "stuff" given to Plaintiffs by individuals for making into tinctures, butters, and other types of food to ingest, see Rona Lindsey Dep. at 11-15, 22 (Ex. 34 to Burrows Decl.) (describing material that people dropped off as unusable because it contained floor sweepings, dirt, hair, and "gross stuff" and stating that she made butters, tinctures, and "those things"); Randy Lindsey Dep. at 49-50 (Ex. 33 to Burrows Decl.) (patients wanted him to process tinctures, butter, or "whatnot"), Plaintiffs concede that "the total weight of the marijuana

---

to link it to having been seized from the safe.  Id. at 6.  The copy shown on page 3 of Exhibit 20 indicates that it is E-35/Bag 17, but the Evidence Form shows that E-35 was found in Mallory's car during the traffic stop and did not come from the safe.  Ex. 1 to LeGore Decl. at 15.

Additional problems are seen in Randy Lindsey's descriptions of the bag weights.  As one example, he states in his declaration that E-46/Bag 14 contained 8.9 grams of marijuana, but, the copy of the "cover" shown in Exhibit 20 actually lists, in handwriting Randy Lindsey identifies as his own, "89 Total" with no decimal point.  Randy Lindsey Decl. at ¶ 8; Ex. 20 to Burrows Decl. at 1.  This is a consistent discrepancy.

Again, however, in the end, Randy Lindsey admits to having 2.26 pounds of marijuana on January 30, 2006 at the time the residence was searched.  Randy Lindsey Decl. at ¶ 15.

in the safe was *approximately three pounds and the content of the large consolidated bag*

[presumably a reference to E-1] *may have had some marijuana in it, but not all of it was*

*marijuana*." Pl.'s Resp. Mem. at 32. As a result, for the purposes of this motion only, I accept

Plaintiffs' representation that the amount of marijuana seized from their residence was

approximately three pounds plus whatever small amount Plaintiffs concede was contained in E-1.

Plaintiffs argue that the OMMA entitles them to hold up to ten pounds of usable

marijuana and seventy-two plants for four people. Because the approximately three pounds

seized was less than what they were allowed, they argue that defendants lacked probable cause to

arrest them. In support, they rely on Randy Lindsey's Declaration where he states that in

accordance with the OMMA, he was allowed to grow medical marijuana for his own use and that

of four additional patients and that each patient was entitled to have up to two pounds of usable

medical cannabis. Randy Lindsey Decl. at ¶¶ 3-4.[3]

Plaintiffs' argument is unavailing because the OMMA license Randy Lindsey possessed at

the time of the search on January 30, 2006 did not allow Plaintiffs to possess the quantity of

marijuana they concede was seized during the search. In his deposition, Randy Lindsey admitted

that at the time of the search, he was a registered OMMA cardholder and was authorized to grow

marijuana only for his own use. Randy Lindsey Dep. at 28, 31, 121 (Ex. 9 to Jagelski Sec.

Affid.) (stating that in 2006, he had a patient card and a grower card licensing him to grow for

himself but not for any other medical marijuana patient; further stating that at the time the search

---

[3] Randy Lindsey's Declaration is not evidence to the extent he offers an interpretation of
the law. Moreover, in his deposition he testified that based on the license he had in January
2006, he was allowed to possess twenty-four ounces (1.5 pounds) of dry processed weight of
medical marijuana. Randy Lindsey Dep. at 98 (Ex. 6 to LeGore Decl.).

15 - OPINION & ORDER

warrant was executed he was not providing medical marijuana to other patients; further

confirming at a different point in the deposition that he did not act as a grower for anyone but

himself).  Additionally, Rona Lindsey was not licensed in any capacity under the OMMA at the

time the search warrant was executed.  Rona Lindsey Dep. at 8 (Ex. 5 to LeGore Decl.) (stating

that she was not an OMMA cardholder at the time the search warrant was executed); see also Ex.

18 to Burrows Decl. (Or. Dep't of Health & Hum. Servs. Report of OMMA license status for

Randy Lindsey and Rona Lindsey showing that Randy Lindsey had been an OMMA patient

continuously since March 29, 2001 and that Rona Lindsey had been an OMMA patient on three

separate occasions, none of which was effective in 2006).

     Under O.R.S. 475.320(1)(a), an OMMA "registry identification cardholder" or the

designated primary care cardholder may possess up to six mature marijuana plants and up to

twenty-four ounces of usable marijuana.  Thus, under the license Randy Lindsey possessed at the

time of the search warrant execution, he was lawfully entitled to possess one and one-half pounds

of marijuana plus six mature plants.  Based on his own deposition testimony, he was not licensed

to grow for other patients.  Furthermore, even if he was licensed to grow for other patients,

Randy Lindsey was required to obtain and display a marijuana grow site registration card issued

under O.R.S. 475.304 for each registry identification cardholder or designated primary caregiver

for whom marijuana is being produced.  O.R.S. 475.320(2)(d).  The record does not establish that

Randy Lindsey complied with this requirement.

     Additionally, Plaintiffs do not challenge the existence of several other pieces of evidence

seized in the search which further establishes probable clause.  For example, Randy Lindsey

admitted to having three jars of marijuana.  Randy Lindsey Depo. at 86 (Ex. 6 to LeGore Decl.).

16 - OPINION & ORDER

Jars of marijuana were found at the residence on January 30-31, 2006, before the arrest.  Ex. 1 to

LeGore Decl.  Randy Lindsey also admitted to having twelve other containers of green leafy

substance in the house that he believed contained marijuana and admitted that there might have

been three other baggies of marijuana in the house, all on the night of the search.  Id. at 94-95,

101, 102.  Although there are no weights attributed to the jars, containers, and baggies, all the

police needed for probable cause to arrest was a reasonably objective belief that a crime had been

committed.  Thus, in addition to the marijuana Plaintiffs concede they possessed, the presence of

additional amounts of marijuana, its numerous locations in the home, and the other paraphernalia

indicative of distribution seized from the residence on January 30-31, 2006 combine to establish

probable cause to arrest despite Randy Lindsey's possession of a valid OMMA license at the

time.

I grant the summary judgment motions because putting aside any evidence from the

officers, the undisputed evidence in the summary judgment record shows that Defendants had

probable cause to arrest Plaintiffs for the marijuana-related crimes based on the evidence they

obtained from the search of Plaintiffs' property.  I decline to address Defendants' alternative

arguments.  And, I further decline to address the individual Defendants' evidentiary objections

because Plaintiffs tendered a signed Declaration of Randy Lindsey and even without resolving

the remaining objections, I grant the summary judgment motion.

/ / /

/ / /

/ / /

/ / /

17 - OPINION & ORDER

CONCLUSION

Defendants' motions for summary judgment [80, 84] are granted.

IT IS SO ORDERED.

Dated this _____ day of _____, 2013

_____
Marco A. Hernandez
United States District Judge

18 - OPINION & ORDER